## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KELLY HOPKINS, et al.,

                              Plaintiffs,

        v.                                              Civ. No. 07-3679

NEWDAY FINANCIAL, LLC, et al.,

                              Defendants.

## MEMORANDUM ORDER

The parties' discovery motions (Docket Nos. 20 & 21) appear to stem from a misunderstanding of the nature and purpose of the court's decision of February 29, 2008 (Docket No. 19), to allow discovery into the issue of this dispute's arbitrability. Therefore, the court will undertake to clarify its previous order, and will deny both motions without prejudice so that the parties may reconsider their positions in light of this clarification.

I.      Background

This dispute concerns the wages paid by defendant NewDay Financial, LLC ("NewDay"), to the plaintiffs, a group of former NewDay account executives who seek to bring the lawsuit on behalf of all similarly situated NewDay employees.  Compl. ¶ 1. According to plaintiffs, they were not paid in accordance with the Fair Labor Standards

Act for work performed in excess of forty hours per week. Compl. ¶¶ 32, 42.

On November 13, 2007, defendant moved to dismiss plaintiffs' complaint, or, in the alternative, to compel arbitration, citing arbitration agreements signed by each of the named plaintiffs.  Docket No. 14.  Defendant did not present any colorable grounds for dismissal of the suit; rather, defendant addressed its arguments to question of whether the dispute should be stayed pending arbitration.[1]  Plaintiffs opposed the motion, asserting that the arbitration agreements were unconscionable and were procured through duress. Plaintiffs submitted affidavits in support of these common-law defenses to contract enforcement.  Plaintiffs further alleged that the forum named by the arbitration agreements, the National Arbitration Forum, was biased, but candidly admitted that they would need discovery to prove that allegation.

The court denied the motion to compel arbitration without prejudice and granted the parties 120 days to complete discovery "on the arbitration issue."  The meaning of "on the arbitration issue" has caused some confusion, and the parties have submitted nearly mirror-image motions, one to compel,  and one for a protective order, that seek to define the scope of discovery allowed.

II.    Discussion

Under the Federal Arbitration Act, 9 U.S.C. § 3, federal courts are instructed to

---

[1] Defendants asked that the court dismiss the suit so that the parties could submit to arbitration.  The Third Circuit, however, has held that it is error for a district court to dismiss a suit on the ground that all issues are subject to arbitration; rather, the proper remedy is to stay the litigation pending arbitration.  *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004).

stay any suit in which an issue in dispute is properly referable to an arbitrator under a valid written arbitration agreement. Before doing so, however, the court is obliged to satisfy itself that the arbitration agreement is valid and binding. *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997) ("Under the FAA the district court must be satisfied that the parties entered into a valid arbitration agreement."). In making that determination, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

In this case, plaintiffs seek to invalidate the arbitrations agreements on the grounds of duress and unconscionability. To consider these defenses, the court looks primarily to the law of Pennsylvania, because it is the forum state and appears to have a strong relationship with the agreements at issue. *Gay v. CreditInform*, 511 F.3d 369, 388 n.13 (3d Cir. 2007) ("We recognize that courts including our court look to the law of the forum state or another state related to the circumstances of the dispute in determining as a matter of federal law whether an issue is referable to arbitration.").

Under Pennsylvania law, "[d]uress is defined as 'that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness.'" *Strickland v. Univ. of Scranton*, 700 A.2d 979, 986 (Pa. Super. Ct. 1997) (quoting *Carrier v. William Penn Broadcasting Co.*, 233 A.2d 519, 521 (Pa. 1967)). When the nature of the threat is

-3-

economic, rather than physical, the doctrine of economic duress applies.  "The important elements in the applicability of the doctrine of economic duress or business compulsion are that (1) there exists such pressure of circumstances which compels the injured party to involuntarily or against his will execute an agreement which results in economic loss, and (2) the injured party does not have an immediate legal remedy."  *Litten v. Jonathan Logan, Inc.*, 286 A.2d 274, 282 (Pa. Super. Ct. 1971).  Duress will not lie where the aggrieved party had the opportunity to consult with counsel before entering into the allegedly coercive contract.  *Degenhardt v. Dillon Co.*, 669 A.2d 946, 950-51 (Pa. 1996).

According to the named plaintiffs, they were forced to sign arbitration agreements in a compressed span of time under threat that their employment would terminate if they did not agree.  *See* Spevak Affidavit, at ¶ 4; Colby Affidavit, at ¶ 10; Smith Affidavit, at ¶ 4; Vanic Affidavit, at ¶ 6; Aden Affidavit, at ¶ 5; Cox Affidavit, at ¶ 5; Hopkins Affidavit, at ¶ 3; Gorcey Affidavit, at ¶ 3-4; Heumann Affidavit, at ¶ 3.  Plaintiffs attest that they were not previously under the understanding that their employment was contingent on agreeing to arbitrate any employment-related disputes; rather, this contingency was revealed either (a) some time after they had begun employment, or (b) on the very day they were to start employment, with a companion threat that they would miss pay if they sought to review the agreement.  *Id.*  Moreover, they attest that, because the time for signing was so short, they were accorded no opportunity to seek the review of counsel.  *Id.*  Plaintiffs' affidavits appear to present a set of circumstances that are at least

-4-

arguably coercive enough to constitute duress under Pennsylvania law.

In Pennsylvania, "a contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it." *Salley v. Option One Mortgage Corp.*, 925 A.2d 115, 119 (Pa. 2007). Unconscionability, then, has procedural and substantive aspects.

As to procedural unconscionability, the touchstone is whether the party challenging the agreement had any meaningful choice regarding acceptance of its provisions. *Thibodeau v. Comcast Corp.*, 912 A.2d 874, 886 (Pa. Super. Ct. 2006). Here, the plaintiffs have averred that they were presented with a contract of adhesion, and were given no opportunity to negotiate. *See* Spevak Affidavit, at ¶ 4; Colby Affidavit, at ¶ 10; Smith Affidavit, at ¶ 4; Vanic Affidavit, at ¶ 6; Aden Affidavit, at ¶ 5; Cox Affidavit, at ¶ 5; Hopkins Affidavit, at ¶ 3; Gorcey Affidavit, at ¶ 3-4; Heumann Affidavit, at ¶ 3.

An agreement is substantively unconscionable if it is "unreasonably favorable to the drafter." *Huegel v. Mifflin Const. Co.*, 796 A.2d 350, 357 (Pa. Super. Ct. 2002). Plaintiffs argue that the arbitration agreement is unreasonably favorable to NewDay, *inter alia*, because the arbitral forum's rule prohibiting plaintiffs from proceeding as a class action, and forcing them instead to proceed individually. A series of Pennsylvania cases have held that limiting the use of the class-action vehicle, if it raises costs to the point of effectively preventing individual redress, is substantively unconscionable. *See, e.g.,*

*Thibodeau*, 912 A.2d at 883-84.  The open question here is whether the forum's rules raise costs to that level.

In addition, plaintiffs allege systemic bias on the part of the arbitral forum.  If proved, such bias could potentially render the arbitration agreement fundamentally unfair to plaintiffs.  But, as plaintiffs admit, they cannot prove that claim without discovery.

It is the court's view that plaintiffs' submissions, at the very least, highlight several questions of fact relevant to the validity of the arbitration agreements.  When faced with a fact-intensive question regarding the arbitrability of a dispute, it is within the court's discretion to allow for limited discovery into whether the arbitration agreements at issue are valid.  *See Klepper v. SLI, Inc.*, 45 Fed. Appx. 136, 139 (3d Cir. 2002).  That was the intent of this court's order of February 29, 2008.  Docket No. 19.  It was not the court's intent to limit discovery only to the question of the arbitral forum's alleged bias, but to allow discovery more broadly into all of the defenses to arbitration raised by plaintiffs, as all appear to call for the resolution of factual questions.

III.    Conclusion

Given this clarification, it is the court's hope that the parties will be able to resolve their differences with regard to what materials are discoverable.  They are encouraged to do so, and should file any additional discovery motions only as a last resort.  The discovery period will be extended until September 1, 2008,  to account for any time lost in trying to determine the scope of discovery.

*   *   *   *   *

AND NOW, this 30th day of June, 2008, it is hereby ORDERED that:

1.      Plaintiffs' motion to compel discovery (Docket No. 20) is DENIED without
        prejudice, and

2.      Defendants' motion for a protective order (Docket No. 21) is DENIED
        without prejudice.

3.      Discovery on the question of whether the arbitration agreements at issue
        here are valid and binding shall be completed by September 1, 2008.

                                BY THE COURT:

                                /s/ Louis H. Pollak

                                _____
                                Pollak, J.