IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KELLY HOPKINS, et al.,

                Plaintiffs,

v.

NEWDAY FINANCIAL, LLC, et al.,

                Defendants.

Civ. No. 07-3679

**MEMORANDUM / ORDER**

October 15, 2008                                                                                           Pollak, J.

       Defendants have submitted six separate motions to compel discovery (Docket Nos. 37 - 42) concerning alleged misconduct by counsel at the August 2008 depositions of six of the plaintiffs in this matter. Plaintiffs have answered all six (Docket Nos. 43 - 54).[1] While the court is puzzled as to why these motions are appearing now, two months after the depositions themselves and a month after the court held a hearing on the last round of discovery disputes, it nevertheless will undertake to resolve this most recent dispute.

**I.     Background**

---

[1] Defendants elected to submit a separate and distinct motion for each deposition. Plaintiffs likewise chose to answer each motion with an individual memorandum. While the specific facts of each situation certainly were unique, the legal arguments appear to be much the same. The court would urge, for the sake of clarity and ease of management, that in the future, the litigants find ways to consolidate filings when warranted.

This lawsuit concerns the wages paid by defendant NewDay Financial, LLC ("NewDay"), to the plaintiffs, a group of former NewDay account executives. Plaintiffs allege that they were not paid in accordance with the Fair Labor Standards Act for work performed in excess of forty hours per week.

In November 2007, defendant moved to compel arbitration, citing agreements signed by each of the named plaintiffs. In light of plaintiffs' claims of duress and unconscionability regarding the agreements, the court denied without prejudice defendants' motion to compel arbitration and granted the parties 120 days to complete limited discovery "on the arbitration issue."

This guidance quickly led to the first in a series of discovery deadlocks and motions. In a July 2, 2008 Memorandum/Order (Docket No. 27), the court defined the scope of limited discovery with some precision, dismissed the parties' various discovery motions, and cautioned that the parties "should file any additional discovery motions only as a last resort." The parties tried again and failed again, and the motions to compel returned. The court addressed a large slate of disputed discovery items at a conference between the parties on September 8, 2008 and instructed the parties to cooperate better. The current flock of motions arrived in court but eleven days later.

The motions concern a series of depositions of the individual plaintiffs taken on August 6 and 7, 2008 by Howard Hoffman, counsel for the defendants. Stephen Springer, counsel for the plaintiffs, attended these depositions and took what could be described as

an "active role" by asserting numerous objections and instructing his clients not to answer.  *See, e.g.,* Aden Dep. at 28 - 30.  Mr. Springer contended in the depositions that the questions that raised his objection strayed outside the limits on discovery set by this court.  *See, e.g., id.*  Mr. Hoffman stated at the time that he might seek court intervention, and, at one point, Mr. Springer replied that he would welcome it.  *Id.* at 109.  Mr. Hoffman did not, however, act immediately on these deposition problems, even though Mr. Springer filed a motion to compel discovery with respect to other matters on August 11 (Docket No. 29).

Instead, Mr. Hoffman apparently contacted Mr. Springer in writing on September 16, 2008 seeking to reconvene all six depositions.  *See, e.g.,* Defendants' Certificate of Conference (attached to Aden Motion).  Among other things, Mr. Springer allegedly responded that he needed to know the questions still at issue and suggested written interrogatories instead.  *Id.*  Mr. Hoffman responded with draft motions to compel.  *Id.*  Mr. Springer allegedly ignored this move, and Mr. Hoffman filed his motions, asserting in his papers that he "exhausted all efforts to resolve this matter with Plaintiff's [sic] counsel."  *Id.*

## II.    Analysis

Fed. R. Civ. P. 26(b)(1) permits litigants to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  A court can limit discovery through court order.  *Id.*  Relevance under Rule 28 is generally construed

broadly. *In re: Automotive Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2006 WL 1479819 (E.D. Pa. May 26, 2006) (citing *Oppenheimer Funds v. Sanders*, 437 U.S. 340, 351 (1978)).

Concerning the "defense of depositions" and issues of relevance, Fed. R. Civ. P. 30 offers an attorney representing a deponent three options. *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 191 (E.D. Pa. 2008). Counsel can object under Rule 30(c)(2) in a "nonargumentative and nonsuggestive manner," after which the deponent is obliged to answer the question. Also under Rule 30(c)(2), counsel can instruct the witness not to answer "only when necessary" to preserve a privilege or uphold a limitation set by the court. Lastly, the attorney may bring an immediate motion to terminate or limit the deposition if the other side is acting in bad faith or is unreasonably annoying, embarrassing, or harassing the deponent. Fed. R. Civ. P. 30(d)(3)(A). Overall, however, the rules, federal courts, and professional experience caution restraint by the attorney defending a deposition. *See, e.g.,* Fed. R. Civ. P. 30(d)(2); *Boyd v. Univ. of Maryland Medical System*, 173 F.R.D. 143, 144 (D. Md. 1997); Heidi K. Brown, *Fundamentals of Federal Litigation* § 15:51.

In its July 2 Memorandum/Order, the court limited and defined the scope of discovery as follows. The parties could conduct discovery into whether the arbitration agreements at issue are valid. This could include discovery into any alleged bias of the arbitral forum and into the procedural and substantive aspects of the defenses to

4.

arbitration raised by the plaintiffs – duress and unconscionability.

To summarize the various filings here, the defendants argue that the contested deposition questions were relevant and within the limitations on discovery set by the court, while the plaintiffs contend the exact opposite.  There is evidence that both sides are right – which means that evidence also exists showing that both sides are wrong.  The court reminds the parties that questions *relevant* to the issues within this limited discovery, under the Third Circuit and Eastern District of Pennsylvania's understanding of relevance, likely would be broader than inquiries just into the signing of the agreements and the agreements themselves – but would not stray too far afield from these topics and from issues of the employment environment at NewDay.  Plaintiffs object, for example, that inquiries into their employment after separation from NewDay are irrelevant, thus not allowed.  *See, e.g.,* Pls.' Mem. in Oppos. at 10 (Aden Dep.).  The court agrees, as a general matter.[2]  The plaintiffs also object, however, that questions about one deponent's understanding of arbitration as a process are irrelevant, *id.* at 5, and that questions about whether another deponent "trusts" NewDay are outside the limits, Spevak Dep. at 52 - 53.  Such protestations appear implausible at best.

Most noteworthy in these contentious depositions are two things: the attorneys' ill

---

[2] The court would point out that a question like "Have you ever had to sign an arbitration agreement at another job?" – that was intended to glean differences in approaches and in the deponent's reactions to each – might well be relevant, if properly tailored.

attitudes toward one another and their concomitant unwillingness to work together to advance discovery.  The filings and deposition excerpts here are full of examples where counsel for the defense poses too broad or vague a question and counsel for the plaintiffs simply intervenes and orders the deponent to clam up – an action that usually leads to recriminations from defense counsel, etc., etc.  What the court has made plain for months is that it expects the parties, as required broadly by the rules of discovery (*see* Advisory Committee's Explanatory Statements Concerning 1970 Amendments to Discovery Rules in Title V of the Fed. R. Civ. P.), to work together to find the solid ground within the limits imposed.  A vague question like "Mr. Posner did not refuse to answer any questions?" could be focused by the lawyers to fit within such limits.  Frequently, though, the attorneys for the parties fall on one another's throats before they seek to clarify, agree, and move forward with the process of this litigation.

  Accordingly, the court will not rule question-by-question on these disputes.  To do so might only encourage more inappropriate attorney behavior.  Instead, the court will give more detailed guidance on how the parties themselves can resolve these deposition disputes more productively.

  When taking depositions, particularly those of the individual parties, the examiner will tailor his questions to areas relevant to the limits of discovery.  The attorney representing the deponent may object under Rule 30(c)(2) if he honestly believes the question is not relevant to the issues defined by this court.  The examiner then will make a

6.

statement summarizing the relevance of the question, and the deponent is expected to answer. However, if deponent's counsel remains substantially unsatisfied, he may request that he and opposing work quickly to reframe the question. If the attorneys cannot reach accord and deponent's counsel still strongly objects and has substantial grounds to believe that the question is outside the limited scope of discovery, then and only then may he instruct the deponent not to answer. It is the court's expectation that counsel will seek to work cooperatively and efficiently on these matters and to restore the process of depositions in this lawsuit to what it is intended to be: a chance to get the *deponent* talking about his or her relevant knowledge or experience.

      The court has given some suggestions on what will be allowed and what disallowed as the parties seek to wrap up this limited discovery. Counsel for both sides must now confer and decide what questions the defendants still have to pose to the six plaintiffs whose depositions disintegrated into this bickering. The court will grant defendants' motion only insofar as these individuals can be called back for brief extensions to the original depositions – if that is the best way to pose the relevant questions. The suggestion of plaintiffs' counsel, however, that the outstanding inquiries could be reduced to interrogatories appears to be a productive one. If the parties agree to this format instead of additional depositions, the court would expect the plaintiffs to allow a reasonable number above the limit of twenty five set by Rule 33(a)(1) if the defendants already have made ample use of this form of discovery.

One final word before the court sends the parties on their way. As alluded to above, both sides have demonstrated a disingenuous lack of rigor concerning the limitations placed on discovery. Both sides appear to have reached beyond the limits and sought discovery that is broader than allowed. But both sides likewise have hidden behind the limitations or sought to wield them to do away with inconvenient or uncomfortable – but relevant – requests. And rarely has either side approached the process with reasonableness, responsibility, cordiality, or professionalism. This is regrettable. There is work to be done – by the lawyers here and by this court here and elsewhere. It is time for counsel to get on with their work.

### III. Conclusion

AND NOW, for the reasons stated above, it is hereby ORDERED that defendants' motions to compel (Docket Nos. 37 - 42) are GRANTED IN PART and DENIED IN PART. Defendants may, if necessary, recall Aden, Colby, Hopkins, Smith, Spevak, and Vanic for brief depositions to answer outstanding relevant questions.

In addition, it is ORDERED that discovery on the question of whether the arbitration agreements at issue here are valid and binding is EXTENDED and shall be completed by November 7, 2008 to accommodate defendants' inquiries of these six plaintiffs.

BY THE COURT:

/s/ Louis H. Pollak
Pollak, J.